O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DEWAYNE WILSON, | ) Case No. CV 12-1536-OP |
| Petitioner, | ) |
| v. | ) MEMORANDUM OPINION AND ) ORDER |
| GARY SANDOR, Warden,[1] | ) |
| Respondents. | ) |

**I.**

**PROCEEDINGS**

On February 23, 2012, Mark Wilson ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") (ECF Nos. 1, 1-1, 1-2.)[2] On January 14, 2013, Petitioner filed a pleading entitled "Motion for Summary Judgment." (ECF No. 37.) The Court construes the pleading as a supplement to the Petition and has considered it as

---

[1] Gary Sandor, the warden of Petitioner's place of incarceration, is hereby substituted as the Defendant herein. See Fed. R. Civ. P. 25(d)(1).

[2] For ease of reference, the Court will use the ECF docket numbers and ECF-generated page numbers when referring to the Petition and its Exhibits.

such. On January 22, 2013, Respondent filed an Answer to the Petition. (ECF No. 38.) On February 22, 2013, Petitioner filed his Reply. (ECF No. 40 .) Thus, this matter is ready for decision.[3]

## II.

## **PROCEDURAL HISTORY**

On February 28, 2011, in the Los Angeles County Superior Court, Petitioner was convicted of petty theft with prior theft convictions after entering a no contest plea (Cal. Penal Code § 666). (Lodgment 1.) Petitioner admitted that he had previously suffered one serious or violent felony conviction ("strike") within the meaning of California's Three Strikes law (Cal. Penal Code §§ 667(b)-(I) & 1170.12(a)-(d)). On February 28, 2011, Petitioner was sentenced to a total state prison term of four years. (Lodgments 1, 2.)

On January 16, 2011, Petitioner filed a habeas corpus petition in the California Supreme Court. (Lodgment 3.) On March 2, 2011, the supreme court summarily denied the petition. (Lodgment 4.)

On April 15, 2011, Petitioner filed an application for a certificate of probable cause to appeal in the Los Angeles County Superior Court. (Lodgment 6.) On April 15, 2011, the superior court denied the certificate. (Lodgment 8.)

On April 18, 2011, Petitioner filed a habeas corpus petition in the California Court of Appeal. (Lodgment 9.) On May 26, 2011, the court of appeal denied the petition with citation to People v. Duvall, 9 Cal. 4th 464, 474 (1995), and People v. Karis, 46 Cal. 3d 612, 656 (1988). (Lodgment 10.) The court of appeal also denied Petitioner's ineffective assistance of trial counsel claims on the merits. (Id.)

On October 27, 2011, Petitioner filed a petition for writ of error coram nobis in the Los Angeles County Superior Court. (Lodgment 14.) On October 27, 2011,

---

[3] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 17, 18.)

the superior court denied the petition on the merits, also noting that the claims were conclusory, could have been raised on appeal, could have been raised in prior habeas petitions, were piecemeal and repetitive, and were successive. (Lodgment 15.)

On October 3, 2011, Petitioner filed a habeas corpus petition in the California Supreme Court. (Lodgment 16.) On February 15, 2012, the supreme court summarily denied the petition. (Lodgment 18.)

## III.
## PETITIONER'S CLAIMS

Petitioner raises the following claims for habeas corpus relief:

(1) Trial counsel was ineffective by making false statements to obtain a continuance ("Ground One(A)"), and in being aware of the judge's alleged conflict of interest but failing to challenge the judge on that basis ("Ground One(B)") (ECF No. 1 at 6);

(2) Petitioner was deprived of his "substantial right" to an impartial judge because the judge's husband allegedly worked with the prosecution's witnesses ("Ground Two") (id.);

(3) Petitioner was deprived of his right to a speedy trial ("Ground Three") (id. at 7); and

(4) Petitioner was the victim of vindictive prosecution because the prosecution re-filed charges that had been dismissed for lack of probable cause, because Petitioner's bail amount during pretrial proceedings was excessive, and because "special circumstances" demonstrated the vindictive spirit of the prosecution ("Ground Four") (id.; Reply at 15-16).

## IV.
## STANDARD OF REVIEW

1    The standard of review applicable to Petitioner's claims is set forth in 28
2 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act
3 of 1996 ("AEDPA"):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If these standards are difficult to meet, it is because they were meant to be. Harrington v. Richter, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" and a writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent. Id. Further, a state court factual determination shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d

389 (2000).  To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court.  LaJoie v. Thompson, 217 F.3d 663, 669 n.6 (9th Cir. 2000).  Ninth Circuit cases "may be persuasive."  Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).  On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court.  Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004); see also Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings.  Williams, 529 U.S. at 405.  A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing Williams, 529 U.S. at 405-06).  When a state court decision adjudicating a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."  Williams, 529 U.S. at 406.  However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Packer, 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an

unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts.'" Id. at 11 (citing 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. See Williams, 529 U.S. at 406-10, 413 (e.g., the rejected decision may state Strickland rule correctly but apply it unreasonably); Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." Visciotti, 537 U.S. at 27. An "unreasonable application" is different from an erroneous or incorrect one. Williams, 529 U.S. at 409-10; see also Visciotti, 537 U.S. at 25.

Where, as here, the state courts supply no reasoned decision, this Court must perform an "'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (citing Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000)).

## V.

## DISCUSSION

**A.    Habeas Relief Is Not Warranted on Petitioner's Claims of Error in Pre-Plea Proceedings.**

### 1.    Background.

Petitioner contends in Ground One(A) and Ground Three that a number of errors occurred during the court proceedings leading up to his change of plea. (ECF No. 1 at 6.) Specifically, in Ground One(A), Petitioner contends that trial counsel rendered ineffective assistance by making false statements to obtain a continuance for the purpose of obtaining discovery that he already had in his possession. (Id.) In Ground Three, Petitioner contends that he was deprived of his right to a speedy trial when the trial judge granted pre-trial continuances. (Id.)

6

2. **<u>Legal Standard.</u>**

As explained by the United States Supreme Court in <u>Tollett v. Henderson</u>, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

<u>Id.</u> at 267.

The Supreme Court explained further in <u>United States v. Broce</u>, 488 U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989):

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack.

<u>Id.</u> at 569; <u>see also</u> <u>Mitchell v. Super. Ct.</u>, 632 F.2d 767, 769 (9th Cir. 1980) ("as a general rule, one who has voluntarily and intelligently pled guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations").[4]

---

[4] <u>Tollett</u> applies with equal force to a no contest plea. Cal. Penal Code §
(continued...)

7

### 3. **Analysis.**

Petitioner's claims in Ground One(A) that trial counsel was ineffective by making false statements to obtain a continuance, ostensibly for the purpose of obtaining discovery he already had in his possession. (ECF No. 1 at 6.) Petitioner fails to explain how this could have affected the voluntary and intelligent nature of his plea. In fact, at his plea hearing, he stated: "I try to stay abreast of things. I understand this is the offer that I should take. I'm an adult man." (Lodgment 20 at 4.) He confirmed that he understood and was waiving his rights to a jury trial, a court trial, confrontation, and cross-examination. (Id. at 5-6.) He stated that he understood the terms of the plea agreement and the consequences of his plea. (Id. at 9.) He finally stated that he was entering into the plea "freely and voluntarily," pled no contest to the petty theft with priors charge, admitted to three prior theft convictions, and admitted to a prior strike conviction. (Id. at 9-11.)

In Ground Three, Petitioner claims that granting of pre-trial continuances deprived him of his right to a speedy trial. (ECF No. 1 at 7.) He again fails to explain how this violation relates to the voluntary and intelligent nature of his plea.

Accordingly, Grounds One(A)nd Three clearly arise out of proceedings that preceded Petitioner's change of plea and do not amount to jurisdictional challenges to the voluntary and intelligent nature of his plea. See Tollett, 411 U.S. at 267 ("[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief."); Ortberg, 961 F.2d at 136-38 (habeas relief for pre-plea speedy trial violation barred by Tollett); United States v. Bohn, 956 F.2d 208, 209

---

[4](...continued)
1016 ("[A] plea of nolo contendere shall be considered the same as a plea of guilty . . . . The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); see also Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992) (applying Tollett to no contest plea).

(9th Cir. 1992) ("By pleading guilty, Bohn waived his right to assert a Speedy Trial Act.").

Based on the foregoing, because these claims do not challenge the voluntary and intelligent nature of the plea, they are not cognizable here.[5] Thus, habeas relief is not warranted on these claims.

**B.  Habeas Relief Is Not Warranted with Respect to Petitioner's Claim that Trial Counsel Was Ineffective by Failing to Challenge the Trial Judge's Alleged Conflict of Interest.**

**1.  Background.**

In Ground One(B), Petitioner contends that trial counsel was ineffective because he was "aware of the conflict of interest concerning the judge on the bench." (ECF No. 1 at 6.) Specifically, on February 15, 2011, Los Angeles County Superior Court Judge, Cynthia L. Ulfig, disclosed to the parties that her husband is a Los Angeles County Sheriff's Deputy, and that she was previously employed as a deputy district attorney by the Los Angeles County District Attorney's office between 1983 and 1998. (Lodgment 21.) Petitioner contends that counsel's failure to move to recuse Judge Ulfig constituted ineffective assistance.

**2.  Legal Standard.**

For a petitioner to prevail on his ineffective assistance of counsel claim, he

---

[5] Where Petitioner has failed to argue in either claim that the alleged underlying constitutional error led to an involuntary or unintelligent plea, or otherwise induced his guilty plea, the Court does not address such claims. Even if the Court were to construe Petitioner's claims to raise such arguments, the claims would fail, as he has failed to state how such alleged errors improperly induced his plea. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (underlining that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief").

9

must satisfy a two-prong test: (1) he must show that counsel's performance was deficient, and (2) he must show that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if a petitioner cannot sufficiently prove one of them. Id. at 697; see also Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. Strickland. 466 U.S. at 687-88. Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will the petitioner prove deficient performance. Id. at 690; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment. Strickland, 466 U.S. at 691; see also Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998). A petitioner must also show prejudice, such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Thus, a petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The Strickland standard applies to claims of ineffective assistance of counsel during the plea bargain process. Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); see also Lafler v. Cooper, 132 S. ct. 1376, 182 L. Ed. 2d 398 (2012) (reaffirming Hill). That is, he must show

1  there is a reasonable probability that but for his counsel's errors, he would not have
2  pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 57-59.
3  As previously discussed, Petitioner also has the burden of showing that a guilty
4  plea is not knowing and voluntary.
5       A habeas court's review of a claim under the Strickland standard is "doubly
6  deferential." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420, 173 L.
7  Ed. 2d 251 (2009). The relevant question "is not whether a federal court believes
8  the state court's determination under the Strickland standard was incorrect but
9  whether that determination was unreasonable – a substantially higher threshold."
10 Id. (citations omitted). "[B]ecause the Strickland standard is a general standard, a
11 state court has even more latitude to reasonably determine that a defendant has not
12 satisfied that standard." Id. (citation omitted).
13     **3.   Analysis.**
14      In this case, by the time that Petitioner pleaded no contest, his case had
15 already been transferred to another judge. (Lodgment 8 at 1-2; Lodgment 20 at 1.)
16 As a result, Petitioner has failed to demonstrate that counsel's failure to move to
17 recuse Judge Ulfig was ineffective as the judge in question was no longer even
18 handling his case. Even assuming counsel should have moved to recuse Judge
19 Ulfig, Petitioner has failed to demonstrate prejudice. In return for his no contest
20 plea, he received a four-year state prison sentence. Had he gone to trial, he faced a
21 maximum sentence of eight years. (Lodgment 20 at 7.) Moreover, there was
22 ample evidence of his guilt: he was seen returning the victim's bag to the break
23 room, he was identified at the scene by the eyewitness, and he was found with $57
24 in his front pocket, which approximated the amount missing from the victim's
25 purse. (Lodgment 19 at 4-8.) Accordingly, Petitioner has failed to demonstrate a
26 reasonable probability that he would have rejected the plea offer if counsel had
27 moved to recuse Judge Ulfig.
28      Based on the foregoing, the Court finds that the California court's rejection

of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### C. Habeas Relief Is Not Warranted on Petitioner's Claim That He Was Deprived of His Right to an Impartial Judge.

#### 1. Background.

Petitioner contends he was the victim of judicial bias as a result of Judge Ulfig's failure to recuse herself. (ECF No. 1 at 6.) Specifically, he contends that Judge Ulfig's alleged biases caused her to grant pre-trial continuances in violation of his right to a speedy trial. (Id.)

#### 2. Legal Standard.

"The Due Process Clause entitles a person to an impartial and disinterested tribunal . . . ." Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980). A trial court "must be ever mindful of the sensitive role it plays in a jury trial and avoid even the appearance of advocacy or partiality." United States v. Harris, 501 F.2d 1, 10 (9th Cir. 1974). To succeed on a claim of judicial bias, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). A judge's remarks or "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). Furthermore, when a district court reviews a state court judge's behavior on habeas review, the question is "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995).

A petitioner may show judicial bias in one of two ways, by demonstrating the judge's actual bias or by showing that the judge had an incentive to be biased sufficiently strong to overcome the presumption of judicial integrity.  See Paradis v. Arave, 20 F.3d 950, 958 (9th Cir. 1994).

### 3. Analysis.

In this case there is no evidence of even an appearance of bias, let alone actual bias.  There is no indication that Judge Ulfig's husband knew Deputy Stewart or any potential prosecution witness, or that Judge Ulfig herself knew any of the witnesses.  In fact, the continuances granted by Judge Ulfig were requested by defense counsel. (Lodgment 1 at 3-4.)  Thus, it is difficult to see how this could be considered evidence of judicial bias *against* Petitioner.

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this claim.

## D. Habeas Relief Is Not Warranted on Petitioner's Claim That He Was the Victim of Vindictive Prosecution.

### 1. Background.

Petitioner contends he was the victim of vindictive prosecution because (1) the prosecution refiled charges that had been initially dismissed for lack of probable cause, (2) his bail amount was excessive, and (3) other "special circumstances" demonstrated the vindictive spirit of the prosecution.  (ECF No. 1 at 7; Reply at 15-16.)

### 2. Legal Standard.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604

(1978). A prosecutor may properly threaten to reindict an accused on more serious charges if the accused refuses to plead guilty to the offense originally charged. Id. at 358-64. "[A] prosecutor may [also] file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368, 380, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). In such cases, the prosecutor may have initially elected to forgo legitimate charges in an effort to save time and money. Id. Also, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance." Id. at 381.

While the Supreme Court demands "exceptionally clear proof" before inferring an abuse of prosecutorial discretion, McCleskey v. Kemp, 481 U.S. 279, 297, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), the Court does prohibit punishing "a person because he has done what the law plainly allows him to do." Goodwin, 457 U.S. at 372 (citation omitted) (internal quotation marks omitted). Thus, a "prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." United States v. Hernandez-Herrera, 273 F.3d 1213, 1217 (9th Cir. 2001) (citation omitted). Where a petitioner contends that a prosecutor made a charging decision in violation of the Constitution, the petitioner's "standard [of proof] is a demanding one." United States v. Armstrong, 517 U.S. 456, 463, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). Petitioner has not met that standard.

### 3. Analysis.

Petitioner first claims that the prosecution vindictively refiled charges against him after they had been dismissed for lack of probable cause. (ECF No. 1 at 7, 49.) He states that there was no strong evidence presented at the first preliminary hearing other than hearsay. (Id. at 7; see also id. at 25.) At that first hearing, witness Kaur testified on cross-examination that she did not "know

whether" Petitioner was the same person she saw returning the bag to the employee break room[6] (Id. at 25), and the victim, Saborio, testified that she did not see the perpetrator in the courtroom (id. at 37). After the court dismissed the charges for lack of probable cause, the prosecution stated that they would be immediately refiling the matter and requested that Petitioner not be transported back. (Id. at 49.) After refiling, a second preliminary hearing was held in which Deputy Sheriff Stewart testified that at the time of the incident Kaur positively identified Petitioner as the person she saw with Saborio's bag. (Lodgment 19 at 7.) After this hearing, the court found probable cause to hold Petitioner to answer to the charges. (Id. at 20-21.)

      The prosecution is permitted to refile charges that have been dismissed for lack of probable cause. DeAnda v. City of Long Beach, 7 F.3d 1418, 1422 & n.6 (9th Cir. 1993) (a "dismissal at a preliminary hearing has no preclusive effect under California law," and "an initial dismissal for lack of probable cause is never a binding determination on the lack of probable cause.") Even though Kaur and Saborio did not conclusively identify Petitioner at the first preliminary hearing, at the time of the theft Kaur identified him to Deputy Stewart. Thus, there was valid reason for the prosecution to refile charges, and Petitioner has not shown that the decision to do so was in anyway vindictive.

      With respect to Petitioner's claim that the bail amount was excessive (ECF No. 1 at 7), the record reflects that his bail amount was set at $1,195[7] throughout

---

    [6] On direct examination she testified that Petitioner "looked like" the individual she saw with the bag. (ECF No. 1 at 21.)

    [7] There may be some confusion on Petitioner's part as he states that the bail was set at "one million, one hundred and ninety five thousand dollars for a charge of petty theft." (Reply at 15 (internal quotation marks omitted).) To help set aside any confusion, the actual amount of bail in "long form" is one thousand, one

(continued...)

the pretrial proceedings. (Lodgment 1 at 2-5.) Petitioner contends this amount is excessive for a case with "no 'actual' eyewitness, no video, no finger prints, and contradicting statements, and hearsay testimony on a dismissed case that could not be used at trial." (Reply at 3.)

In California judicial officers are vested with the "exclusive authority to enhance or reduce bail." Galen v. Cnty. of L.A., 477 F.3d 652, 663 (9th Cir. 2007)). "A law enforcement officer can only be held liable for . . . excessive bail 'if they prevented the [judicial officer] from exercising his independent judgment.'" Muhammad v. San Diego Cnty. Sheriff's Dep't, No. 07-1430 IEG (PCL), 2008 WL 821832, at *2 (S.D. Cal. 2008) (citing Galen, 477 F.3d at 659).

In this case, Plaintiff alleges no facts to indicate that the prosecutor had anything to do with the amount of bail set, let alone vindictively influenced the judge. There is nothing to indicate that the judicial officer was prevented in any way from exercising her independent judgment.

Finally, Petitioner claims that "special circumstances" demonstrate the vindictive spirit of the prosecution. (ECF No. 1 at 7; Reply at 15-16.) Specifically, he notes that there were positive factors in his history that were not considered by the prosecutor in his zeal to prosecute Petitioner. (Reply at 16.) In support, he states that a favorable parole officer's report recommending against incarceration, his current employment history at the time of the alleged crime, and his demeanor and lack of flight at the time of the incident all should have been considered by the prosecution. (Id.)

A review of the record shows that the prosecution agreed to the midterm doubled for one of Petitioner's priors, and agreed to strike the other prior, for a term of 48 months. (Lodgment 20 at 3-4, 8.) The potential term for Petitioner had

---

[7](...continued)
hundred, and ninety-five dollars. (Lodgment 1 at 1.)

he not agreed to the plea deal was eight years. (<u>Id.</u> at 7.) Petitioner's allegations that the prosecutor's actions were in any way vindictive for failing to take into account the alleged "special circumstances," are nothing but conclusory and speculative. Such allegations do not suffice for habeas corpus relief. <u>James</u>, 24 F.3d at 26 (conclusory allegations lacking in factual support do not provide grounds for habeas relief); <u>Jones</u>, 66 F.3d at 204-05 (conclusory allegations unsupported by a statement of specific facts do not warrant habeas relief).

Based on the foregoing, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## VI.

## **ORDER**

Based on the foregoing, the Court denies the Petition dismissing this action with prejudice, and Judgment shall be entered accordingly.

DATED: March 7, 2014

HONORABLE OSWALD PARADA
United States Magistrate Judge